UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VENSON LANE MYERS | ) | Civil No.08cv117 W (WMc) |
| Plaintiff, | ) ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| L.E.SCRIBNER, et al. | ) ) | **OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANTS'** |
| Defendants. | ) ) | **MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| | ) | |

**I. Introduction**

In this prisoner civil rights case, Venson Lane Myers ("Plaintiff") is proceeding *pro se* and *in forma pauperis* ("IFP") pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915(a). Currently pending before the Court is Defendants' unenumerated motion to dismiss on the ground that plaintiff failed to properly exhaust available administrative remedies prior to bringing this action. [Doc. No. 11.]

This Report and Recommendation is submitted to United States District Judge Thomas J. Whelan, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.3 of the United States District Court for the Southern District of California. After reviewing the pleadings, parties' briefs and exhibits filed in support thereof, for the reasons set forth below, the Court recommends the Motion to Dismiss of Defendants be GRANTED as discussed in detail below.

///

///

**II. Factual Background**

    **A. <u>Underlying Events</u>**

Beginning on July 7, 2007, Plaintiff began to consider organizing a Christian-based celebratory feast as he believes "feeding was and is a work set forth in the gospel for our benefit." (Complaint at 4.)[1] Plaintiff researched the prison rules and regulations concerning religious events and discovered inmate religious groups are permitted, at most, two religious events each year where foods with religious significance are provided by the prison. (Complaint at 4).

On August 23, 2007, Plaintiff had a discussion with the Associate Warden of Calipatria State Prison, Defendant Builteman concerning the religious feast Plaintiff was planning. (Complaint at 3). Defendant Builteman told plaintiff to submit a proposal for the feast to the prison chaplain, Defendant Richey, for consideration. (Complaint at 3).

On September 24, 2007, a memorandum was submitted, presumably by Plaintiff or others working in conjunction with Plaintiff, to Defendants Warden Scribner, Associate Warden Builteman and Chaplain Richey requesting administrative approval of a religious food feast to be held on December 8, 2007 with an anticipated attendance of eight hundred (800) members of the Christian inmate community. (Complaint at 12).

On September 30, 2007, Plaintiff submitted a Request for Interview with Defendant Richey in order to discuss Defendant Richey's reasons for refusing to consider the proposal for a Christian food feast. (Complaint at 8). Sometime thereafter Defendant Richey spoke with Defendant Builteman concerning the proposed feast. During this discussion Defendant Builteman noted the Federal Prisons Religious Manual made "no mention of religious feasts for Christian faith" while feasts were allowed for Jews and Muslims as mandated by the tenets of their respective religions. On October 3, 2007, Defendant Richey memorialized the contents of this discussion in a note responding to Plaintiff's request for interview. (Complaint at 9). The same memorandum also notes that the only foods of religious significance to the Christian faith are bread and wine and that, in accordance with "the Lord's Supper," an Easter event may be planned with these foods provided. (Complaint at 9).

---

[1] The Court will refer to specific pages of Plaintiff's complaint based on the pagination of documents found in the Court's ECF system (Case No. 08-cv-0117; Doc. No. 1).

Plaintiff alleges that on October 3, 2007, Defendant Builteman formally denied Plaintiff's proposal for a Christian feast on December 8, 2007. (Complaint at 5, 9).

### B. Procedural History

On October 8, 2007, Plaintiff filed a formal appeal, designated as CAL-A-07-01891, concerning the denial of the proposed Christian feast. (Complaint at 10). Review of this claim was accepted for consideration by Defendant Builteman at the First Level of Review on October 10, 2007. (Complaint at 11).

On October 14, 2007, Plaintiff filed an additional formal appeal, to be attached to the previous appeal (CAL-A-07-01891), concerning cancellation of Christian worship services by Defendant Richey on October 13, 2007. (Complaint at 13). Plaintiff alleges that, although the justification given for the cancellation of Christian worship services was out of consideration for the Ramadan religious ceremony, the actual reason for the cancellation was to retaliate against Plaintiff for his earlier appeal concerning the denial of his proposed Christian feast. (Complaint at 13). This appeal was marked as received on October 16, 2007. (Complaint at 13; Dec. of D. Bell in Support of Defendant's Mot. to Dismiss at 3, para.. 7(a).)

On October 24, 2007, a formal hearing was held on Plaintiff's appeal (CAL-A-07-01891). (Complaint at 3, 15). At this hearing, Defendant Builteman stated he was not sure what the Christian religion required by way of a religious ceremony and provided Plaintiff with the chance to convince him the proposed Christian feast was mandated by the Christian faith. (Complaint at 3). Plaintiff raised no additional issues but simply relied on what was written in his appeal. (Complaint at 15).

On December 12, 2007, Defendant Builteman issued his formal decision concerning the Plaintiff's appeal. (Complaint at 15). Defendant Builteman granted Plaintiff's appeal in part by acknowledging the Christian faith places religious significance on "celebration bread and wine (juice)" in accordance with the Lord's Supper and, therefore, such a ceremony would be allowed. (Complaint at 15). Defendant Builteman denied the appeal as to the proposed attendance of eight hundred (800) inmates citing a risk to "the safety and security of inmates and staff." (Complaint at 15). Plaintiff's appeal was also denied as to the claim that Defendant Richey cancelled worship services in retaliation for the submission of the food feast appeal. Defendant Builteman explained the worship services were

cancelled due to a scheduling misunderstanding by the Protestant service sponsors. (Complaint at 15). Finally, the December 12, 2007 decision notes, "the issue may be submitted at the Second Level of Review." (Complaint at 15). On January 18, 2008, Plaintiff filed the current complaint under 42 U.S.C. §1983 in the United States District Court, Southern District of California. [Doc. No. 1.]

**III. Discussion**

    **A.**    **Standard of Review**

Congress amended 42 U. S. C. § 1997e with the Prison Litigation Reform Act (PLRA") to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a). The exhaustion requirement applies to inmate suits about prison life. *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

The Supreme Court has ruled that exhaustion of prison administrative procedures is mandatory. *Porter*, 534 U.S. at 524. The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion. *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir. 2003). Defendants bear the burden of raising and proving the absence of exhaustion. *Id.* "In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust - a procedure closely analogous to summary judgment - then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record."[2] *Id.* at 1120 n. 14. When the court determines that the prisoner has not properly exhausted all available administrative remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120. An action must be dismissed unless the prisoner exhausted his available administrative remedies ***before*** he filed suit. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (emphasis added).

---

[2] On November 3, 3008, the Court, *sua sponte*, notified Plaintiff Myers of the pending motion to dismiss and was given an extension of time in which to file an opposition to Defendants' motion to dismiss in order to develop a record. [*See* Doc. No. 16.] Plaintiff thereafter filed an opposition to the motion to dismiss on November 24, 2008. [Doc. No. 18.]

///

## B. The State of California's Formal Levels Of Review

The State of California provides prisoners the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. Tit. 15, § 3084.1(a). It also provides the right to file appeals alleging misconduct by correctional officers and officials. Id. at § 3084.1(e). A prisoner must proceed through several levels of appeal in order to exhaust the administrative remedies available: (1) informal resolution, (2) formal written appeal on a 602 inmate appeal form, (3) second level appeal to the institution head, and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation. *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). A decision at the third formal level, also referred to as the director's level, is not appealable and concludes the prisoner's administrative remedies process. Cal. Code Regs. Tit. 15 §§ 3084.1(a) and 3084.5(e)(2).

## C. Analysis

In the present case, Defendants raise Plaintiff's fail to exhaust in an unenumerated motion to dismiss. Specifically, Defendants argue Plaintiff did not properly exhaust his administrative remedies before filing his complaint as mandated by section 1997e(a). [Doc. No. 11-2 at 4:13-14.] In support of their motion, Defendants have submitted the declarations of: (1) Calipatria State Prison Appeals Coordinator, D. Bell and (2) N. Grannis, the Chief of the Inmate Appeals Branch. The declarations describe the procedural history of all the administrative grievances Plaintiff has submitted to prison officials.

According to D. Bell's declaration, the Inmate/Parolee Appeals Tracking System follows the progress of formal appeals through the First, Second and Third Levels of Review. (D. Bell. Decl., 2:6-22.) A review of the Inmate/Parolee Appeals Tracking Log Level I & II indicates Plaintiff did not submit Appeal No. CAL-A-07-01891 to the Second Level of Review. (D. Bell Decl., 3:2-8., Exh. A to Bell Decl.) Similarly, the declaration of N. Grannis, which describes the tracking of Third Level appeals to the Inmate Appeals Branch, confirms Plaintiff has not submitted Appeal No. CAL-A-07-01891 to the Third Level of Review. (N. Grannis Decl., 3:20-23., Exh. A to Grannis Decl.) The record reveals only that, after receiving a partial grant of Appeal No. CAL-A-07-01891 at the First Level of

Review on December 12, 2007, Plaintiff failed to further exhaust and instead filed suit in federal court on January 18, 2008, a little more than one month after receiving a First Level decision. [Doc. No. 1.]

As explained above, defendants have the burden to prove the affirmative defense of failure to exhaust administrative remedies. *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir. 2003). Defendants have carried their burden. Plaintiff has not demonstrated proper compliance with the administrative appeals process, or that the Second and Third Levels of Review were unavailable to him. Instead, Plaintiff contends that, because his appeal form had the words "Routing - Time Sensitive, Citizen Complaint" at the top, his appeal qualifies as an exception to the regular appeals process under Cal. Code Regs. Tit. 15, § 3084.7(a)(2)(B), making appeals through the Third Level of Review unnecessary. [Doc. No. 18, Plaintiff's Opposition at 9:3-7 and 9:20-22.] A careful review of the California Code of Regulations, however, demonstrates Plaintiff's argument is misguided. Section 3084.7(a)(2)(B) requires a "threat to the appellant's safety or . . . other serious and irreparable harm" before an emergency processing exception to the regular appeals process may be employed. Cal. Code Regs. Tit. 15, § 3084.7(a)(1). Moreover, the determination of whether an appeal qualifies as an emergency is made by the appeals coordinator, not by an inmate. Cal. Code Regs. Tit. 15, § 3084.7(a)(2)(A). There is no indication on Plaintiff's appeal No. CAL-A-07-01891 or on the Appeal Decision partially granting appeal No. CAL-A-07-01891 that Plaintiff's appeal qualified for emergency processing or that the Second and Third levels of Review requirements had somehow been waived. (Attachments to Plaintiff's Complaint at 10-15.) In fact, the Appeals decision expressly states: "Be advised that this issue may be submitted at the Second Level of Review." (Attachment to Plaintiff's Complaint at 15.)

As *McKinney* requires dismissal of an action if administrative remedies have not been exhausted prior to filing suit, it is hereby **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED.** *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (holding an action must be dismissed unless the prisoner exhausted his available administrative remedies before filing suit.)

///
///
///
///

### IV. Plaintiff's Request for Judicial Notice

Plaintiff requests the Court take judicial notice of an allegation that Defendant Charles Richey, "in the presence of sponsor brother 'Lenny' . . . stated A/W Builteman copied a religious manual for all four yards about a year and a half ago and place[d] them in the yard chapel." (*See* Plaintiff's Request for Judicial Notice filed *nunc pro tunc* November 26, 2008, at 1:20-26.)

Judicial Notice is governed by Federal Rule of Evidence 201 which governs only judicial notice of adjudicative facts. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FRE 201. In other words, "the fact must be one that only an unreasonable person would insist on disputing." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

The allegation that sponsor brother Lenny witnessed a statement by one of the defendants, is neither a generally known fact, nor capable of ready determination to sources of unquestionable accuracy. Moreover, the proposed statement is irrelevant to the issue of exhaustion. Accordingly, it is recommended that the Court **DENY** Plaintiff's request to take judicial notice.

### V.     CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Judicial Notice be **DENIED**;
2. Defendants' motion to dismiss be **GRANTED**; and
3. This action be dismissed without prejudice for failure to exhaust administrative remedies.

This Report and Recommendation will be submitted to United States District Judge Thomas J. Whelan pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the court and serve a copy on all parties **by December 26, 2008.** The document should be captioned "Objections to Report and Recommendation."

///

///

///

Any reply to the objections shall be served and filed **by January 16, 2009.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: December 3, 2008

_____
Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court

Copy to:

HONORABLE THOMAS J. WHELAN, U.S. DISTRICT COURT

ALL COUNSEL OF RECORD